UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE GENERAL MOTORS ERISA
LITIGATION,

Case No. 05-71085

Honorable Nancy G. Edmunds

_____/

## ORDER GRANTING IN PART AND DENYING IN PART
## DEFENDANTS' MOTION TO DISMISS [62]

Pending before this Court is Defendants'[1] Motion to Dismiss, filed on August 24, 2006, in response to Plaintiffs' Amended Complaint in this matter, (Docket No. 58) filed on July 17, 2006.[2] This is a case brought under § 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, alleging that Defendants are liable for actions taken with respect to two separate Employee Stock Ownership Plans ("ESOPs," or the "Plans") maintained for General Motors' employees. As the Court was preparing to address Defendants' motion in February 2007, the parties announced that they expected to settle the case, and the hearing on this motion was cancelled. Settlement talks were unsuccessful, leading to Defendants re-noticing the motion in July 2007. In the interim, two additional individuals moved to intervene as plaintiffs in this case, and Defendants have

_____

[1]The remaining defendants include General Motors and a number of individuals and committees that oversee certain Employee Stock Ownership Plans ("ESOPs," or the "Plans"). (Am. Compl. ¶¶ 21-26.)

[2]Any reference to the "Complaint" in this Order refers to the Amended Complaint.

elected not to oppose their intervention. (Docket No. 91.) Defendants recognize that this is particularly relevant, as it negates the first argument in their motion to dismiss–namely, that Plaintiffs do not have standing to file this lawsuit because none are current "participants" in the Plans as defined by ERISA.[3]

On April 6, 2006, the Court denied the GM Defendants' first motion to dismiss, (Docket No. 51) but granted then-Defendant State Street Bank & Trust Company's ("State Street's") motion to dismiss, eliminating that entity from this case. A full summary of the background facts can also be found in the April 6, 2006 Order, and need not be repeated here. According to Plaintiffs, the only substantive modifications in their Amended Complaint are: (1) inclusion of additional factual pleadings for Count II, to meet the heightened pleading standard of Fed. R. Civ. P. 9(b), and (2) elimination of Count VI, which only applied to then-Defendant State Street. (Pl.'s Resp. at 2.) Plaintiffs have also withdrawn any claim for relief under § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), so their remaining claims all sound under § 502(a)(2), which addresses a breach of fiduciary duty under 29 U.S.C. § 1109.[4]

In support of the instant motion to dismiss, Defendants argue: (1) Plaintiffs have not stated valid claims under Counts I and II for breach of fiduciary duties, (2) once Plaintiffs'

---

[3]Still, Defendants reserve the right to reassert this issue in any future motion for summary judgment, or in opposition to any motion for class certification.

[4]"Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. . . ." 29 U.S.C. § 1109(a).

breach of fiduciary duty claims fail, their derivative allegations in Counts III, IV and V must also be dismissed, (3) Section 502(a)(2) of ERISA does not entitle plan participants such as Plaintiffs to recover, and (4) all claims against Defendant General Motors Investment Management Corporation ("GMIMCo") should be dismissed for the same reason this Court previously dismissed Defendant State Street. Plaintiffs dispute all of Defendants' assertions, primarily on the ground that the instant motion is an untimely and improper request for reconsideration of this Court's April 6, 2006 Order. For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss.

## I.  STANDARD OF REVIEW - MOTION TO DISMISS

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a Complaint. In a light most favorable to Plaintiff, the court must assume that Plaintiff's factual allegations are true and determine whether the Complaint states a valid claim for relief. *See Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Federal Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996); *Forest v. United States Postal Serv.*, 97 F.3d 137, 139 (6th Cir. 1996).

This standard of review "'requires more than the bare assertion of legal conclusions.'" *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997) (quoting *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The Complaint must include direct or indirect allegations "respecting all the material elements to sustain a recovery under *some* viable legal theory." *See In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citations omitted).

## II.  ANALYSIS

### A. Count I–Breach of the Fiduciary Duty of Prudence

In short, Defendants argue that Count I must be dismissed because Plaintiffs' factual allegations of GM's financial instability are not plausible in light of allegedly uncontrovertible facts that refute Plaintiffs' assertions. For their part, Plaintiffs contend that Defendants' argument merely seeks reconsideration of this Court's April 6, 2006 Order denying Defendants' motion to dismiss Count I, and that such a motion is both (1) untimely because it was not filed within ten days of the April 6, 2006 Order pursuant to Eastern District of Michigan Local Rule 7.1(g)(1), and (2) does not meet the standard set forth in that rule. Specifically, Local Rule 7.1(g)(3) provides that

> the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication. The movant must not only demonstrate a palpable defect by which the court and the parties have been misled but also show that correcting the defect will result in a different disposition of the case.

L.R. 7.1(g)(3).

Although long on verbiage, Defendants' argument regarding Count I is short on information that would justify a different result than the one this Court reached in its April 6, 2006 Order. Upon a review of that Order and Defendants' instant motion to dismiss, the Court concludes that Defendants do not raise any arguments here that are significantly different than those at bar over a year ago, so reconsideration is unavailable under L.R. 7.1(g)(3). Furthermore, much of Defendants' argument is based upon competing facts that it advances in opposition to Plaintiffs' allegations. As this Court noted in the April 2006 Order, "[w]hether Plaintiffs can provide proof of their allegations is an issue for another day, after discovery has developed a factual record." *In re General Motors ERISA Litig.*, No. 05-71085, 2006 WL 897444 at *13 (E.D. Mich. Apr. 6, 2006). Nothing has changed in the past sixteen months to warrant this Court coming to a different conclusion on this issue today.

That said, Defendants do properly note that a recent U.S. Supreme Court case expressly abrogated a statement from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), which this Court, among many others, had used as part of the applicable standard of review for a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *See Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1968-69 (2007).[5]  The Supreme Court stated that the proper standard is "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Id.* at 1969.  A review of the Complaint confirms that Plaintiffs' allegations have met this standard, so the recent *Bell Atlantic* case is also not a proper ground for reconsidering this Court's April 6, 2006 Order that Count I states a valid claim for relief.

### B.  Count II–Breach of the Fiduciary Duty of Disclosure

In its April 6, 2006 Order, this Court ruled that Plaintiffs needed to amend the original complaint in order to properly state a claim for fraud under Count II, pursuant to the heightened pleading standard in Fed. R. Civ. P. 9(b) which requires that allegations of fraud must be stated with particularity.  Since Plaintiffs properly stated a claim that Defendants did not meet their affirmative duty of disclosure under ERISA, the Court held that the original complaint did not need to be amended on this ground.  Even though Plaintiffs have now filed their Amended Complaint, Defendants assert that Count II should be dismissed for several reasons: (1) Plaintiffs' fraud claims still do not state particular allegations against all Defendants, (2) Defendants were not acting in a fiduciary capacity under ERISA when

---

[5]The specific statement from *Conley* was that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  355 U.S. at 45-56.

they made the alleged misrepresentations, (3) there are no duties to disclose any information under ERISA besides those specifically included in the statute, and (4) the fact that Defendants' alleged misrepresentations were made to individual participants rather than the Plans as a whole precludes Plaintiffs from relief under § 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2), which is their last remaining avenue for recovery.

### 1. Plaintiffs' separate fraud and negligent misrepresentation claims

Count II of the Complaint now states two primary types of allegedly wrongful conduct by Defendants: (1) affirmative misrepresentation, by way of failing to inform Plaintiffs of items that Defendants had an affirmative duty to disclose, (Compl. ¶¶ 189, 271) and (2) negligent misstatements for failing to ensure that SEC filings referred to in Plan prospectuses contained accurate information. (*Id.* ¶¶ 188, 274.)

### a. Plaintiffs' misrepresentation claim is stated with the requisite degree of particularity as to Defendants GM and Wagoner only

Defendants first argue that Plaintiffs' Complaint still does not properly assert the specific defendant who made each alleged misrepresentation and sufficient information for them to identify each claimed misrepresentation. After a review of the relevant portions of the Complaint, (¶¶ 103-89, 265-77) the Court concludes that Defendants are correct as to most of them, but that Plaintiffs have properly pled fraud claims for certain items against Defendant GM and Defendant Richard Wagoner, Jr. The gist of Plaintiffs' allegations of fraud is that certain financial information listed in GM's SEC filings during the class period was either incorrect or misleading, and that incorporating these deficient filings by reference in Plan prospectuses constituted misrepresentation to Plaintiffs.

Although Plaintiffs refer to Defendants collectively throughout this portion of the Complaint, it is insufficient for Rule 9(b) purposes to do so. Rather, Plaintiffs must identify the specific defendant, or defendants, who are alleged to have made each misstatement, as a blanket allegation against all defendants will not suffice. *U.S. v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003). In the entire discussion of alleged misrepresentations in SEC filings, the only defendants specifically named are GM, on whose behalf the filings were made, and Wagoner, who signed particular SEC reports. Plaintiffs essentially concede this point in their response to Defendants' motion, (Pls.' Resp. at 20-21) and did not argue otherwise during oral argument before this Court. Because Plaintiffs identify the particular SEC filings, along with the associated Plan prospectuses that referred to those filings, the Court is satisfied that they have properly pled fraud claims against Defendant GM and Defendant Wagoner. As to the other named defendants, however, the Court agrees with Defendants that Count II no longer applies to them, to the extent that Plaintiffs' claims involve actual fraud or misrepresentation. The Court will now address Plaintiffs' separate claim for negligent misstatements.

### b. Plaintiffs raise viable claims for negligent misrepresentation against Defendants

The Complaint makes clear that Plaintiffs are also alleging that Defendants are liable under Count II for the separate reason that they negligently referenced the incorrect and misleading information in GM's SEC filings in Plan prospectuses and other documents. (¶¶ 188, 274.) Defendants contend that Plaintiffs cannot circumvent the heightened standards of Rule 9(b) by couching what is truly a fraud claim as a negligence claim. *Rombach v. Chang*, 355 F.3d 164, 172 (2nd Cir. 2004) (distinguishing between the pleading standards

for fraud and negligence claims in a securities law case). In response, Plaintiffs cite a number of cases that they claim differentiate between these two types of claims. (Pls.' Resp. at 22.) After examining both parties' cases, the Court has determined that none provide adequate support for what either side is claiming with regards to this particular issue in the instant case. That conclusion notwithstanding, the Court finds that a resolution of this question is not necessary here, as a review of the applicable portions of the Complaint reveal that Plaintiffs have stated their negligent misrepresentation allegations with sufficient particularity to meet Rule 9(b)'s heightened pleading standard. As noted above, Plaintiffs have identified specific SEC filings that contained misleading information as well as the Plan documents that referenced those filings. Furthermore, Plaintiffs have alleged that identified Defendants, who held controlling positions over the Plans and were presumably responsible for the Plan documents sent to Plaintiffs and other participants, had a duty that they breached. Accordingly, the Court concludes that Plaintiffs have properly pled this portion of their claim under Count II against all Defendants.

### 2. Defendants undertook the alleged actions in a fiduciary capacity under ERISA

Both parties agree that Defendants are only liable for the alleged misstatements and omissions if they were acting as a fiduciary under ERISA at the times outlined in the Complaint. *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 449 (6th Cir. 2002). Defendants argue, however, that the alleged misstatements are tied to various SEC filings, and that these actions therefore fall under securities law, rather than ERISA. In support, Defendants cite several cases, (Defs.' Mot. at 22-23) but as Plaintiffs point out, all of those from other district courts are easily distinguished because either (1) the associated plan

documents at bar did not refer to the allegedly misleading SEC filings, (2) the plaintiffs did not properly allege how the misleading SEC filings were actually communicated to plan participants, or (3) nothing in the complaint identified the allegedly misleading statements from the defendant's SEC filings.  On the other hand, Plaintiffs cite numerous cases, including one from this district, holding that the plaintiffs properly pled a breach of fiduciary duty in circumstances when specific statements or plan documents referenced the defendant's filings with the SEC.  (Pls.' Resp. at 23.)

Defendants' citation to *Varity Corp. v. Howe*, 516 U.S. 489 (1996), is slightly more persuasive, but an examination of that case reveals that it, too, does not reach as far as Defendants suggest.  Specifically, Defendants argue that *Varity* stands for the proposition that a defendant is only acting as an ERISA fiduciary with regards to financial information when it speaks directly about plan benefits.  As a result, Defendants contend that *Varity's* holding conflicts with the cases that Plaintiffs cite on this issue because none of these involved actual discussions related to plan benefits.

In *Varity*, the Supreme Court held that the defendant was acting as a fiduciary for purposes of ERISA when it convinced employees to voluntarily transfer to another entity by stating that the employees' benefits would remain the same, despite the fact that the defendant knew the new company's finances were so poor that maintaining the existing benefits would not be possible in the long run.  Defendants would distinguish the instant situation from the one in *Varity* because "[D]efendants made no statements in the prospectuses or SEC filings regarding the amount or security of participants' benefits under the Plans."  (Defs.' Mot. at 22.)    Such a position improperly restricts *Varity's* holding, however, as that case truly involved a question of whether the defendant was engaged in

plan administration at the time of the alleged misconduct, not whether the defendant was specifically discussing plan benefits. *Varity*, 516 U.S. 502-03. The Court found that the defendant's statements to its employees in seeking to procure their transfer to the new company was "essentially . . . plan-related activity." *Id.* at 503. Thus, the Court did not find that an employer *must* have been speaking about benefits under the plan. Rather, by taking such an action, the defendant engaged in plan administration, which implicated a fiduciary duty to the participants.

Thus framed, the proper inquiry for this Court, in order to comply with *Varity's* holding, is whether Defendants were engaged in plan administration when they referenced the allegedly misleading statements contained in GM's SEC filings. Defendants contend that nothing in ERISA mandates the disclosure of financial information for the underlying company whose stock is held in an ESOP, and that this leads to a conclusion that Defendants were not administering the Plans because the acts they engaged in were not statutory requirements under ERISA. It is true that ERISA does not require such disclosures, but Defendants' position disregards the fact that Plaintiffs are not alleging that Defendants necessarily had an affirmative duty to disclose GM financial information. The essence of Plaintiffs' claim in this part of Count II is that Defendants disclosed *some* financial information, but did not make a *full and complete* statement of GM's financial position. Furthermore, *Varity* precludes Defendants' argument by the Court's statement that "[t]here is more to plan . . . administration than simply complying with the specific duties imposed by the plan documents or statutory regime; it also includes the activities that are 'ordinary and natural means' of achieving the 'objective' of the plan." *Varity*, 516 U.S. at 504 (quoting Bogert & Bogert, Law of Trusts and Trustees § 551 at 41-52). At

10

bottom, this Court has no trouble concluding, and Defendants do not argue specifically to the contrary, that Defendants were engaged in acts of plan administration when they produced Plan prospectuses referencing various SEC filings that were allegedly misleading. Thus, the Court also finds that the various cases that Plaintiffs cite which came to similar holdings under comparable facts do not conflict with *Varity*, and that the Complaint properly alleges that Defendants were acting as ERISA fiduciaries.

### 3. Defendants had a duty to completely and accurately disclose financial information communicated to Plaintiffs

Defendants explicitly request that the Court "reconsider" section III.A.3.c of its April 6, 2006 Order, which found that Defendants had a duty to provide complete information when speaking to Plan participants after considering a trio of Sixth Circuit cases. *See James*, 305 F.3d 439; *Krohn v. Huron Mem'l Hosp.*, 173 F.3d 542 (6th Cir. 1999); *Sprague v. General Motors Corp.*, 133 F.3d 388 (6th Cir. 1998). This portion of the instant motion to dismiss fails to even mention the standard for reconsideration under Local Rule 7.1(g)(3), however, let alone indicate how that standard is met here. That said, the Court still reviewed these three cases and has determined that reaching a different conclusion from the April 6, 2006 Order is not warranted.

Defendants do cite two additional district court cases from this circuit that this Court did not consider previously. *See In re Ferro Corp. ERISA Litig.*, 422 F. Supp. 2d 850 (N.D. Ohio 2006); *Zervan v. Maday Const., Inc. Employees Profit-Sharing Plan*, 396 F. Supp. 2d 819 (E.D. Mich. 2005). A review of those cases reveals that they are distinguishable from the instant dispute, however, in that those plaintiffs were attempting to argue that the defendants had an affirmative duty to disclose particular financial information that had not

previously been communicated at all. Here, Plaintiffs' allegation is slightly different–that Defendants disclosed some information (by virtue of referring to the SEC filings in the Plan documents) but did not give the full picture of GM's financial condition because of the allegedly misleading information contained in the SEC filings. Thus, the Court further finds that Defendants' newly-cited cases do not provide a rationale for reconsidering the April 6, 2006 Order's analysis of this issue.[6]

### 4. Plaintiffs are not precluded from recovering under ERISA § 502(a)(2) for Defendants' alleged misrepresentations

As a final argument in support of their motion to dismiss Count II, Defendants assert that Plaintiffs' sole avenue for redress in this case, ERISA § 502(a)(2),[7] does not permit recovery here because that provision only prohibits actions taken with regards to *plans* and not the *participants* in those plans. Since Plaintiffs' allegations merely claim that Defendants' misrepresentations were directed at participants, and not the Plans themselves, Defendants claim that they are not liable under § 502(a)(2). This is a hyper-technical reading of the statute that the Court does not believe is tenable under the analysis more fully explained in Section D of this Order below, especially because it is difficult to conceptualize how a fiduciary could communicate solely with an intangible entity like an ERISA plan rather than the actual individual participants in that plan or the plan fiduciaries

---

[6]The Court also does not believe that the facts described in Defendants' final new case, *In re Calpine Corp.*, No. C-03-1685 SBA, 2005 WL 1431506 at *1 (N.D. Cal. Mar. 31, 2005), are given in a sufficiently specific fashion to justify a different interpretation of the existing Sixth Circuit cases discussed above.

[7]29 U.S.C. § 1132(a)(2).

themselves. In addition, Defendants have not included any authority to support this position, so the Court concludes that dismissal would be improper on this ground.

### C. Counts III, IV and V

Defendants admit that Counts III-V are derivative of Plaintiffs' claims under Counts I and II, and either rise or fall with those earlier claims. Therefore, because the first two counts remain viable, Defendants are not entitled to dismissal of Counts III-V.

### D. Plaintiffs Have Standing to Sue Under 29 U.S.C. § 1132(a)(2)

Plaintiffs' sole remaining avenue for recovery in this case is § 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2), as they have abandoned any plea for equitable relief under § 502(a)(3). (Pls.' Resp. at 28 n.14.) Under § 502(a)(2), "[a] civil action may be brought– . . . (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title . . . ." Section 1109 then provides:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable *to make good to such plan* any losses to the plan resulting from each such breach . . . .

29 U.S.C. § 1109(a) (emphasis added). Defendants argue that Plaintiffs are not eligible to sue under this portion of ERISA because any damages that they request will flow directly to individual participants in the plans at issue in this case, and not to the Plans themselves, who are the true beneficiaries of a recovery under § 1109(a). In support of this argument, Defendants cite several cases which have come to this conclusion.

Of primary importance to the instant case, because they represent controlling authority of the U.S. Supreme Court and the Sixth Circuit are *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134 (1985), and *Bauer v. RBX Industries, Inc.*, 368 F.3d 569 (6th

Cir. 2004).[8]  In *Russell*, an individual employee who participated in a benefits plan brought

suit under § 502(a)(2) for the plan's temporary refusal to continue paying for her medical

treatment.  The Supreme Court held, however, that the plaintiff did not state a valid cause

of action under § 502(a)(2) due to the fact that any damages would flow directly to her, and

"[a] fair contextual reading of the statute makes it abundantly clear that its draftsmen were

primarily concerned with the possible misuse of plan assets, and with remedies that would

protect the entire plan, rather than with the rights of an individual beneficiary."  *Id.* at 141.

As the instant case involves a potential class action with numerous additional represented

plaintiffs who would have owned GM stock during the class period, this Court finds that

*Russell* is factually distinguishable on this ground.[9]  As for *Bauer* from the Sixth Circuit, that

case merely stated that "'[A] cause of action under § [502](a)(2) permits recovery to inure

only to the ERISA plan, not to individual beneficiaries,'" 368 F.3d at 582 n.6 (quoting *Adcox*

*v. Teledyne, Inc.*, 21 F.3d 1381, 1390 (6th Cir.1994)), without any further analysis on that

issue.

　　On the other hand, Plaintiffs cite to *Kuper v. Iovenko*, 66 F.3d 1447 (6th Cir. 1995), two

cases from the Eastern District of Michigan, and a similar case out of the Third Circuit.  In

---

[8]Defendants also cite several district court cases from other judicial districts.  *See, e.g., In re Enron Corp. Secs., Derivative & ERISA Litig.*, 228 F.R.D. 541 (S.D. Tex. 2005); *In re JDS Uniphase Corp. ERISA Litig.*, No. C 03-04743 CW (WWS), 2005 WL 1662131 at *12 (N.D. Cal. July 14, 2005).  As the following discussion will indicate, however, this Court concludes that consideration of such persuasive authority is not necessary to resolve this issue, given the controlling authority on point from the Sixth Circuit.  The Court also declines Defendants' invitation to adopt the reasoning of a Fifth Circuit panel that was later vacated by that full court sitting *en banc.  Milofsky v. Am. Airlines, Inc.*, 404 F.3d 338 (5th Cir. 2005) (*vacated, Milofsky v. Am. Airlines, Inc.*, 442 F.3d 311 (5th Cir. 2006)).

[9]*LaRue v. DeWolff, Boberg & Assoc., Inc.*, 458 F.3d 359, 362 (4th Cir. 2006), is distinguishable for the same reason.

*Kuper*, the plaintiffs represented a class of workers who owned shares of a company as part of an ESOP with their employer. When that company sold the assets of a particular division to another entity, the employees were unable to sell their ESOP shares until the new company's shares could be substituted for those of the old employer. That transaction took eighteen months to complete, during which time the shares held in the ESOP lost approximately 80% of their value. *Id.* at 1450-51. In holding that the plaintiffs had standing under § 502(a)(2), the Sixth Circuit held that a recovery would benefit the plan as required by that provision, despite the fact that not every member of the ESOP was also a member of the class.[10]

It is true, as Defendants assert, that the Complaint seeks a number of remedies, including "[a]ctual damages in the amount of any losses the Plans suffered, to be allocated among the participants' individual accounts in proportion to the accounts' losses." (Compl. at 97, ¶ F.) Still, this case is different from *Russell* in that there would potentially be a large number of individuals involved if Plaintiffs are able to meet the burden necessary to have the purported class certified. Accordingly, the instant dispute falls closer to the one at bar in *Kuper* rather than the one-plaintiff situation involved in *Russell*, and the Court concludes that Plaintiffs do have statutory standing to bring this lawsuit under § 502(a)(2) of ERISA.

As a final point on this issue, the Court notes that Defendants do cite a case, *Fisher v. J.P. Morgan Chase & Co.*, 230 F.R.D. 370 (S.D.N.Y. 2005), that would mandate a

---

[10]Two other judges of this district have reached similar conclusions, *In re CMS Energy ERISA Litig.*, 312 F. Supp. 2d 898 (E.D. Mich. 2004) (Steeh, J.); *Rankin v. Rots*, 220 F.R.D. 511 (E.D. Mich. 2004) (Cohn, J.), as well as a panel of the Third Circuit, *In re Schering-Plough Corp. ERISA Litig.*, 420 F.3d 231, 239-41 (3rd Cir. 2005) (quoting *Kuper* and distinguishing *Russell*).

contrary result, were this Court to adopt its reasoning. In *Fisher*, the court was presented with similar facts involving a group of ERISA plan participants seeking to certify a class action to redress alleged breaches of fiduciary duty involving a 401(k) plan that included company stock as one of its investment options. *Id.* at 373. The court refused to certify the class on standing grounds, finding that the plaintiffs did not have standing for purposes of § 502(a)(2) under *Russel* and other similar cases. *Id.* at 375-76. The *Fisher* decision has been criticized by at least two other district court judges, however, including one from the Southern District of New York. *See In re Polariod ERISA Litig.*, 240 F.R.D. 65, 73 (S.D.N.Y. 2006); *Rogers v. Baxter Int'l, Inc.*, 417 F. Supp. 2d 974, 981-82 (N.D. Ill. 2006). In particular, those judges would have distinguished *Russel* because it only involved a single plaintiff, and noted that the *Fisher* court relied upon circuit court opinions in *Milofsky* and *In re Schering-Plough Corp. ERISA Litig.* that were later reversed by the full benches of those courts sitting *en banc*. Finally, the *Rogers* court noted that the majority of recent courts to address this particular question disagreed with the *Fisher* holding. *Rogers*, 417 F. Supp. 2d at 981 (citing cases). Given the subsequent criticism of *Fisher* and the controlling authority from the Sixth Circuit in *Kuper*, the Court declines to follow the reasoning of the former case and holds that Plaintiffs have established statutory standing under § 502(a)(2).

### E. Defendant GMIMCo

Finally, Defendant GMIMCo asserts that Plaintiffs' claims against it fail for the same reasons that this Court dismissed Defendant State Street in the April 6, 2006 Order. Specifically, the Court held that State Street's "discretion as both a directed trustee and as an investment manager was extremely limited," and did not support Plaintiffs' allegations

that it breached a fiduciary duty of prudence. *In re General Motors ERISA Litig.*, 2006 WL 897444 at *20. Plaintiffs proffer several reasons for why Defendant GMIMCo should be treated differently, however: (1) that entity was a "named fiduciary" of the Plan, and was not merely a "directed trustee," as was State Street, (2) Defendant GMIMCo had intimate knowledge of the alleged improper accounting for pension and health care benefits by virtue of the fact that it also serves as the named fiduciary for those separate plans, and (3) Defendant GMIMCo is also named in Count II for breach of the fiduciary duty of disclosure, which did not apply to State Street, so the earlier disposition is not controlling with regards to this separate claim.

### 1. Defendant GMIMCo lacks the discretion necessary to be liable for breach of the fiduciary duty of prudence under Count I, regardless of the fact it was more than a mere directed trustee

With regards to Plaintiffs' first argument involving the difference in defined status between GMIMCo and State Street, that position disregards the fact that the Court dismissed State Street despite the fact that it served "as *both* a directed trustee and as an investment manager." *Id.* (emphasis added). In reaching that conclusion, this Court examined not only the Master Trust Agreement (the "Trust") between GM and State Street, (Defs.' Mot., Ex. I) but also an Investment Management Agreement (the "Agreement") between GMIMCo and State Street (Docket No. 23, State Street Mot. to Dismiss, Ex. 6) and the Plan prospectuses. (*Id.*, Exs. 3, 4.) The Court noted that there were some slight discrepancies between these documents, in that the Trust and Agreement appeared to give State Street some discretion with regards to investing Plan assets, but that any decisions were still subject to the Plans' investment guidelines and fund policies. *In re General Motors ERISA Litig.*, 2006 WL 897444 at *18-19. The Plans' prospectuses then stated that

they "[i]nvest[] solely in the shares of GM, . . . , except for a small portion ordinarily targeted at 1%, dedicated to short-term fixed income investments and money market investments . . . [to] provide liquidity for loans, withdrawals, and exchanges by participants in this Fund." *Id.* at *19 (quoting the Plans' prospectuses).

Even though these documents were not perfectly consistent, the Court held that the prospectuses, and the general purposes of an ESOP, mandated a conclusion that State Street lacked any significant discretion to alter the Plans' holdings from a position invested approximately 99% in GM stock and 1% in cash or other short-term investments. Thus, State Street could not have breached the fiduciary duty of prudence, so it was dismissed as to Count I and the derivative Count VI.[11] To reiterate, the key reasoning behind that holding was not the specific title that State Street held under this arrangement, but, rather, the reality that the Plans' investment guidelines and fund objectives constrained State Street and left it unable to exercise a sufficient degree of discretion to be liable for failure to act prudently by continuing to allow Plan assets to be invested in GM stock. With that in mind, Plaintiffs' quote from this Court's April 6, 2006 Order that State Street's existence as a directed trustee was the true reason behind dismissing that party (Pls.' Resp. at 33 (quoting *In re General Motors ERISA Litig.*, 2006 WL 897444 at *17)) misstates the holding of that Order, especially given that the quoted section was merely describing Defendants' *argument* in support of its motion to dismiss at the beginning of the relevant section of the Order. In reality, the Court's holding was based upon a much broader set of facts than the simple result that State Street was merely a directed trustee.

---

[11]As State Street was the only defendant named in Count VI, Plaintiffs' Amended Complaint no longer includes that count.

With that historical review completed, the Court is not convinced that GMIMCo's situation as a named fiduciary under the Trust is sufficiently different from State Street's position to warrant a contrary result here. To be sure, ERISA requires a "named fiduciary" for all covered plans and defines the term in 29 U.S.C. § 1102(a),[12] and Plaintiffs assert that the Plans specifically list GMIMCo as their named fiduciary. (Compl. ¶¶ 205, 233.) This categorization of GMIMCo's status is not dispositive of the operative question here, however, despite the fact that GMIMCo may have been higher up the chain of delegation from State Street. At bottom, nothing in the Trust or the Plans' prospectuses indicates that GMIMCo would have any greater ability than State Street to vary from the Plans' stated purpose, which was maintaining 99% of their holdings in GM stock and 1% in cash to cover day-to-day cash needs resulting from fund operations. Thus, the Court finds that GMIMCo's existence as a named trustee is an insufficient reason to hold that Count I for breach of the fiduciary duty of prudence applies to GMIMCo.

Plaintiffs advance a related contention when they point to GMIMCo's position as a named fiduciary for GM's pension and healthcare plans and argue that this gave GMIMCo additional knowledge about the status of GM's liabilities in those areas that should have put

---

[12](a) Named fiduciaries

(1) Every employee benefit plan shall be established and maintained pursuant to a written instrument. Such instrument shall provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan.

(2) For purposes of this subchapter, the term "named fiduciary" means a fiduciary who is named in the plan instrument, or who, pursuant to a procedure specified in the plan, is identified as a fiduciary (A) by a person who is an employer or employee organization with respect to the plan or (B) by such an employer and such an employee organization acting jointly.

it on notice of the fact that GM stock was an improper investment vehicle for the Plans, given the alleged understatement of future pension and healthcare obligations. While Plaintiffs state a potentially attractive argument, this position fails to appreciate the underlying conclusion stated above, that GMIMCo did not have sufficient discretion with which to change the investment direction of Plan assets. Therefore, the Court finds that this alleged knowledge is also insufficient to warrant denying GMIMCo's motion to dismiss, as Plaintiffs do not claim that GMIMCo had any authority to influence overall Plan investment objectives and policies.

### 2. Plaintiffs lack support for the allegation that GMIMCo breached the fiduciary duty of disclosure under Count II

Lastly, Plaintiffs contend that the Court should still not dismiss GMIMCo as to Count II, which is Plaintiffs' claim for breach of the fiduciary duty of disclosure. In support, however, Plaintiffs simply re-raise the two arguments already rejected above: (1) that State Street's status as a mere directed trustee distinguishes it from GMIMCo and indicates that the latter entity has a duty of disclosure here, and (2) GMIMCo's internal knowledge of other healthcare and pension obligations triggers the duty of disclosure to ESOP plan members. Plaintiffs do not cite any cases to serve as a foundation for these distinctions, and the Court stands by its analysis of the issue above. To reiterate once more, Plaintiffs cannot allege a violation of duties that fall outside of GMIMCo's area of responsibility over Plan assets. The Court is not aware of anywhere in the Complaint where Plaintiffs allege that GMIMCo failed to maintain the prospectuses' mandated portfolio ratio between GM stock and a minimal amount of liquid investments, so there is no basis for a claim that it breached a duty in the manner alleged by Plaintiffs against the other remaining Defendants.

To conclude, Plaintiffs' claims against Defendant GMIMCo under Counts I and II are DISMISSED. As Plaintiffs' claims against GMIMCo under the remaining counts are entirely derivative of those in the earlier two, all remaining claims against GMIMCo are also DISMISSED.

## III. CONCLUSION

Being fully advised in the premises, having read the pleadings, and for the reasons set forth above, the Court hereby orders that Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. Defendant GMIMCo is dismissed from all counts against it. Following this Order, the remaining claims are: (1) Count I against all Defendants, except GMIMCo, (2) Count II against (a) Defendant GM and Defendant Wagoner only for affirmative representation, and (b) all Defendants, except GMIMCo, for negligent misrepresenation, (3) Counts III, IV and V against all defendants named in each count, except GMIMCo.

SO ORDERED.


s/Nancy G. Edmunds                              
Nancy G. Edmunds
United States District Judge

Dated: August 28, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 28, 2007, by electronic and/or ordinary mail.

s/Carol A. Hemeyer                              
Case Manager