**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

| | | |
|---|---|---|
| **IN RE GENERAL MOTORS ERISA LITIGATION** | :<br>:<br>:<br>: | **Civil Action No. 05-71085**<br>**Honorable Nancy G. Edmunds** |

**PLAINTIFFS' MOTION FOR ORDER**
**PRELIMINARILY APPROVING SETTLEMENT**

STEVE W. BERMAN
ANDREW M. VOLK
Hagens Berman Sobol Shapiro
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292

DAVID R. SCOTT
Scott + Scott, LLC
108 Norwich Avenue
P.O. Box 192
Colchester, CT 06415
Telephone: (860) 537-5537
          -and-
GEOFFREY M. JOHNSON
Scott + Scott, LLC
33 River Street
Chagrin Falls, OH 44022
Telephone: (440) 247-8200

**Co-Lead Counsel for Plaintiffs**

ELWOOD S. SIMON (P20499)
JOHN P. ZUCCARINI (P41646)
Elwood S. Simon & Associates, P.C.
355 South Old Woodward Avenue, Ste. 250
Birmingham, MI 48009
Telephone: (248) 646-9730

**Liaison Counsel for Plaintiffs**

1.       Pursuant to Federal Rule of Civil Procedure 23, Named Plaintiffs Al Balnius,

Michael Birmingham, Jerry L. Canter, Bryan Moore, Jerry Don Fowle and William LaPrad,

request that the Court approve the Class Action Settlement Agreement (the "Settlement

Agreement") (attached as Exhibit 1 to the memorandum in support of this motion).[1]

2.       Attached as Exhibit 2 to the memorandum is a proposed Order Preliminarily

Approving Settlement[2] which would:

a.       Preliminarily approve the proposed Settlement;

b.       Preliminarily certify the proposed Settlement Class;

c.       Approve the form and method of disseminating Notice of the Settlement

to the Settlement Class consisting of (i) the mailing of a long-form Notice

to members of the Settlement Class (attached to the memorandum in

support of this motion as Exhibit 3); and (ii)  a short-form Publication

Notice (attached to the memorandum in support of motion as Exhibit 4) to

be published in the *USA Today* (national edition) and the *Detroit Free

Press*); and

d.       Set a date and time for a Fairness Hearing on the proposed Settlement, and

certain dates in advance of that Fairness Hearing as follows:  (i) a deadline

for the Settling Parties to substantially accomplish Notice to Settlement

Class Members by mailing of the Notice and publication of the

Publication Notice at least 60 days prior to the Fairness Hearing (ii) a

deadline of 20 days prior to the Fairness Hearing for Settlement Class

---

[1] Capitalized terms not otherwise defined in this Motion shall have the same meaning as ascribed to them in the Settlement Agreement filed herewith.

[2] The proposed Order differs slightly from the proposed Order attached as Exhibit A to the Settlement Agreement.

Members to object to the proposed Settlement, the proposed Plan of

Allocation, requests for Service Awards for the Named Plaintiffs, and the

application for an award of attorneys' fees and costs by Class Counsel;

and (iii) a deadline of ten (10) business days prior to the Fairness Hearing

for Named Plaintiffs to file a motion for final approval of the proposed

settlement, and their application for Service Awards for the Named

Plaintiffs and Class Counsel's application for an award of attorneys' fees

and costs.

3.      This motion is fully supported by the accompanying brief and its exhibits.

4.      Pursuant to L.R. 7.1(1)(2)(B), Defendants' counsel consent to the relief sought in

this motion.

DATED: January 15, 2008                    Respectfully Submitted,

                                           By:  s/ Andrew M. Volk
                                           **HAGENS BERMAN SOBOL SHAPIRO LLP**
                                           1301 Fifth Avenue, Suite 2900
                                           Seattle, WA 98101
                                           Telephone: (206) 623-7292
                                           Facsimile:  (206) 623-0594
                                           Email: Andrew@hbsslaw.com

                                           **SCOTT + SCOTT, LLC**
                                           DAVID R. SCOTT
                                           108 Norwich Avenue
                                           P.O. Box 192
                                           Colchester, CT  06415
                                           Telephone: (860) 537-5537
                                           Facsimile: (860) 537-4432

                                                   -and-

**SCOTT + SCOTT, LLC**
GEOFFREY M. JOHNSON
33 River Street
Chagrin Falls, OH 44022
Telephone:  (440) 247-8200
Facsimile:  (440) 247-8275

**Co-Lead Counsel for Plaintiffs**

**ELWOOD S. SIMON & ASSOCIATES, P.C.**
ELWOOD S. SIMON (P20499)
JOHN P. ZUCCARINI (P41646)
355 South Old Woodward Avenue, Ste. 250
Birmingham, MI  48009
Telephone: (248) 646-9730

**Liaison Counsel for Plaintiffs**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

| | | |
|---|---|---|
| IN RE GENERAL MOTORS ERISA LITIGATION | :<br>:<br>:<br>: | Civil Action No. 05-71085<br>Honorable Nancy G. Edmunds |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR ORDER PRELIMINARILY APPROVING SETTLEMENT**

STEVE W. BERMAN
ANDREW M. VOLK
Hagens Berman Sobol Shapiro
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292

DAVID R. SCOTT
Scott + Scott, LLC
108 Norwich Avenue
P.O. Box 192
Colchester, CT 06415
Telephone: (860) 537-5537
-and-
GEOFFREY M. JOHNSON
Scott + Scott, LLC
33 River Street
Chagrin Falls, OH 44022
Telephone: (440) 247-8200

**Co-Lead Counsel for Plaintiffs**

ELWOOD S. SIMON (P20499)
JOHN P. ZUCCARINI (P41646)
Elwood S. Simon & Associates, P.C.
355 South Old Woodward Avenue, Ste. 250
Birmingham, MI 48009
Telephone: (248) 646-9730

**Liaison Counsel for Plaintiffs**

## CONCISE STATEMENT OF ISSUES PRESENTED

1.     Should the Court preliminarily approve the Settlement set forth in the Class Action Settlement Agreement dated December 17, 2007?

2.     Should the Court preliminarily certify a Settlement Class?

3.     Should the Court approve the proposed form and method of Notice to the Settlement Class?

4.     Should the Court schedule a Fairness Hearing and set related deadlines?

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>

*In re CMS Energy ERISA Litig.,* 225 F.R.D. 539 (E.D. Mich. 2004)

*Rankin v. Rots,* 220 F.R.D. 511 (E.D. Mich. 2004)

*Rankin v. Rots,* No. 02-71045, 2006 U.S. Dist. Lexis 45706 (E.D. Mich. June 28, 2006)

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .................................................................................................1

II.    FACTUAL BACKGROUND RELEVANT TO APPROVAL ...........................................1

       A.     Procedural History ...............................................................................1

       B.     The Settlement Provisions ......................................................................3

              1.     Settling Defendants. ....................................................................3

              2.     GM Plans Affected. ......................................................................3

              3.     Settlement Fund. .........................................................................3

              4.     Structural Changes. .....................................................................4

              5.     Settlement Class. ........................................................................4

              6.     Released Claims. .........................................................................5

              7.     Plan of Allocation. ......................................................................5

              8.     Notice .......................................................................................5

III.   THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED ........6

       A.     The Settlement Is Well Within the Range of Possible Approval...........................6

       B.     A Preview of the Criteria for Final Approval Demonstrates That Preliminary
              Approval Should Be Granted..................................................................7

              1.     The Likelihood of Success on the Merits Weighed Against the
                     Amount and Form of the Relief Offered in the Settlement .......................9

              2.     The Risks, Expense, and Delay of Continued Litigation..........................10

              3.     The Judgment of Experienced Counsel and the Amount and
                     Character of Discovery ...............................................................11

              4.     The Settlement Is Fair to Unnamed Class Members ...............................12

              5.     The Settlement Is the Product of Arm's-Length Negotiations .................13

              6.     The Settlement Is Consistent with the Public Interest ...........................13

       C.     This Court Should Preliminary Certify the Proposed Settlement Class ...............14

1.      Rule 23(a)(1) – Numerosity ..................................................................15

2.      Rule 23(a)(2) – Commonality ................................................................15

3.      Rule 23(a)(3) – Typicality ......................................................................16

4.      Rule 23(a)(4) – Adequacy of Representation, and
        Rule 23(g)(1)(B)-(C)...............................................................................17

5.      The Requirements of Rule 23(b)(1) Are Met ..........................................18

D.      The Proposed Notice to the Class Satisfies Rule 23 and the
        Requirements of Due Process ...................................................................20

E.      Proposed Schedule For Final Approval ...................................................21

IV.     CONCLUSION...........................................................................................22

# TABLE OF AUTHORITIES

## CASES

**Page**

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997)................................................................................14

*In re American Med. Sys.*,
    75 F.3d 1069 (6th Cir. 1996) ............................................................15, 16, 17

*Atwood v. Burlington Indus. Equity, Inc.*,
    164 F.R.D. 177 (M.D.N.C. 1995) ......................................................................15

*Berry v. School Dist. of Benton Harbor*,
    184 F.R.D. 93 (W.D. Mich. 1998) ................................................................6, 8

*Bublitz v. E.I. duPont de Nemours & Co.*,
    202 F.R.D. 251 (S.D. Iowa 2001) ....................................................................14

*In re CMS Energy ERISA Litig.*,
    225 F.R.D. 539 (E.D. Mich. 2004) ..................................................14, 16, 18

*In re Cardizem CD Antitrust Litig.*,
    218 F.R.D. 508 (E.D. Mich. 2003) ............................................8, 9, 10, 11, 13

*Carson v. Am. Brands, Inc.*,
    450 U.S. 79 (1981)..........................................................................................8

*Cross v. National Trust Life Ins. Co.*,
    553 F.2d 1026 (6th Cir. 1977) ........................................................................17

*DiFelice v. US Airways, Inc.*,
    436 F. Supp. 2d 756 (E.D. Va. 2006), *aff'd*, 497 F.3d 410 (4th Cir. 2007) ......................10

*In re Enron Corp. Sec. Derivative & "ERISA" Litig.*,
    2006 U.S. Dist. Lexis 43146 (S.D. Tex. June 5, 2006)....................................18

*Furstenau v. AT&T Corp.*,
    2004 U.S. Dist. Lexis 27042 (D.N.J. Sept. 2, 2004)........................................14

*In re GM ERISA Litig.*,
    2006 U.S. Dist. Lexis 16782 (E.D. Mich. Apr. 6, 2006) ....................................2

*In re GM ERISA Litig.*,
    2007 U.S. Dist. Lexis 63209 (E.D. Mich. Aug. 28, 2007)..................................2

*Gardner v. Lafarge Corp.*,
    2007 U.S. Dist. Lexis 42536 (E.D. Mich. June 12, 2007) ...................................................8

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ...................................................................................14

*Gruby v. Brady*,
    838 F. Supp. 820 (S.D.N.Y. 1993)..................................................................................19

*In re IKON Office Solutions, Inc. Sec. Litig.*,
    191 F.R.D. 457 (E.D. Pa. 2000)...............................................................................14, 19

*Koch v. Dwyer*,
    2001 U.S. Dist. Lexis 4085 (S.D.N.Y. Mar. 23, 2001).....................................................19

*Kolar v. Rite Aid Corp.*,
    2003 U.S. Dist. Lexis 3646 (E.D. Pa. Mar. 11, 2003) .....................................................19

*Kuper v. Iovenko*,
    66 F.3d 1447 (6th Cir. 1995) ........................................................................................10

*Mass. Mut. Life Ins. Co. v. Russell*,
    473 U.S. 134 (1985)....................................................................................................19

*Moore v. Simpson*,
    1997 U.S. Dist. Lexis 13791 (N.D. Ill. Sept. 5, 1997)....................................................14

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950)....................................................................................................20

*Nelson v. IPALCO Enters., Inc.*,
    480 F. Supp. 2d 1061 (S.D. Ind. 2007), *aff'd*,
    2008 U.S. App. Lexis 2 (7th Cir. Jan. 2, 2008) ...............................................................10

*Rankin v. Rots*,
    220 F.R.D. 511 (E.D. Mich. 2004) ...............................................................14, 16, 17, 18

*Rankin v. Rots*,
    2006 U.S. Dist. Lexis 45706 (E.D. Mich. June 28, 2006) ..............................................8, 9

*Reed v. Rhodes*,
    869 F. Supp. 1274 (N.D. Ohio 1994).............................................................................20

*Rogers v. Baxter Int'l, Inc.*,
    2006 U.S. Dist. Lexis 12926 (N.D. Ill. Mar. 22, 2006) ...................................................18

*Senter v. GMC*,
    532 F.2d 511 (6th Cir. 1976) ...........................................................................16

*Swody v. Harrah's New Orleans Mgmt. Co.*,
    1996 U.S. Dist. Lexis 5512 (E.D. La. Apr. 22, 1996) .....................................15

*In re Telectronics Pacing Sys., Inc.*,
    137 F. Supp. 2d 985 (S.D. Ohio 2001) ...........................................6, 7, 10, 13

*Thomas v. SmithKline Beecham Corp.*,
    201 F.R.D. 386 (E.D. Pa. 2001) .......................................................................14

*In re Tyco Int'l, Ltd.*,
    2006 U.S. Dist. Lexis 58278 (D.N.H. Aug. 15, 2006) .....................................14

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982) ...............................................................................20

*White v. Sundstrand Corp.*,
    1999 U.S. Dist. Lexis 15091 (N.D. Ill. Sept. 30, 1999) ...................................14

*Williams v. Vukovich*,
    720 F.2d 909 (6th Cir. 1983) ......................................................................12, 21

*In re WorldCom, Inc., ERISA Litig.*,
    2004 U.S. Dist. Lexis 19786 (S.D.N.Y. Oct. 13, 2004)..............................16, 19

## STATUTES

29 U.S.C. § 1109(a) ...................................................................................................19

29 U.S.C. § 1132(a)(2)..........................................................................................17, 19

29 U.S.C. § 1104(a)(2)...............................................................................................14

## MISCELLANEOUS

MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.41 (1995)..........................................6

4 HERBERT NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ......8

3 HERBERT NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 8.34 (4th ed. 2002) .......21

# I.    INTRODUCTION

Plaintiffs respectfully move this Court for preliminary approval of the Class Action Settlement Agreement attached as Exhibit 1 to this memorandum.  Under the Settlement, the Settling Defendants will create a $37.5 million Settlement Fund.  In addition, the Settlement Class Members will benefit from valuable Structural Relief and the provision of financial planning services.  The Settlement was reached after vigorous motion practice and two orders on motions to dismiss from this Court, and Class Counsel's review of nearly a million pages of documents covering all of the core issues in this case.  With the issues in the case thus framed, the parties engaged in arms-length negotiations, and two day-long mediation sessions.  Ultimately, the Settlement was reached with the assistance of the Honorable Layne R. Phillips.  The Settlement will provide significant benefits to the Settlement Class, while removing the risk and delay associated with further litigation.  The proposed Settlement is an excellent result for the Settlement Class, and the Named Plaintiffs and Class Counsel respectfully request that this Court grant Preliminary Approval.

# II.    FACTUAL BACKGROUND RELEVANT TO APPROVAL

## A.    Procedural History

The terms of the Settlement Agreement were reached after several years of hard-fought litigation and only after extensive negotiation and thorough investigation by experienced counsel.  It was made with the benefit of two decisions on motions to dismiss by this Court, and Plaintiffs' review of extensive document productions by Defendants.  The parties were fully aware of the issues and risks associated with their respective claims and defenses.  The Settlement Agreement is the result of arm's-length and often difficult negotiations that spanned many months.

001834-11 214402V1

The original complaints in this case were filed in March of 2005.  On May 10, 2005, this Court entered an Order consolidating the complaints.  Then, on May 13, 2005, the Court entered Pretrial Order No. 1, appointing co-lead and liaison counsel, and ordering Plaintiffs to file a Consolidated Complaint.  On June 24, 2005, Plaintiffs filed their Consolidated Class Action Complaint For Violations Of The Employee Retirement Income Security Act ("Complaint").  The Complaint named as Defendants all known fiduciaries of the Savings Plan and the Hourly Plan.[3]

All Defendants moved to dismiss.  After lengthy briefing and oral argument, the Court (i) upheld Plaintiffs' claims against the GM Defendants in large part; (ii) granted Plaintiffs leave to amend with respect to the one claim it did not uphold – that Defendants "made material misrepresentations" and "conveyed inaccurate information" to Plan participants; and (iii) granted State Street's motion to dismiss.[4]  *See In re GM ERISA Litig.*, 2006 U.S. Dist. Lexis 16782 (E.D. Mich. Apr. 6, 2006).

Plaintiffs filed their First Amended Consolidated Complaint on July 19, 2006.  On August 28, 2007, the Court ruled on Defendants' Second Motion to Dismiss, and again denied it in large part.  However, the Court granted defendant GMIMCo's motion to dismiss.  *See In re GM ERISA Litig.*, 2007 U.S. Dist. Lexis 63209 (E.D. Mich. Aug. 28, 2007).

Plaintiffs have reviewed nearly one million pages of documents obtained from defendants through vigorously contested discovery.  In particular, Plaintiffs have reviewed relevant

---

[3] The defendants included the General Motors Corporation, The Investment Funds Committee of the Corporation's Board of Directors and its members, General Motors Investment Management Corporation ("GMIMCo."), State Street Bank and Trust Company ("State Street"), the members of the Employee Benefits Committee of General Motors Corporation, and the CEO of the General Motors Corporation, Richard Wagoner, Jr. All of the defendants apart from State Street are referred to collectively as the "Settling Defendants" or simply the "Defendants"

[4] The Court subsequently entered final judgment with respect to State Street pursuant to Fed. R. Civ. P. 54(b), and Plaintiffs chose not to appeal that decision.  Accordingly, State Street is no longer a party to this action, and, in fact, is not named in Plaintiffs' First Amended Consolidated Complaint.

documents in connection with all the core issues in this case, including: (i) Plan documents, and all communications with Plan participants; (ii) the meeting minutes of all relevant fiduciary bodies; (iii) documents produced by GM relating to the SEC investigations of GM and Delphi concerning GM's guarantee of employee and retiree benefits for employees of Delphi, and the question of whether GM accounted properly for "Supplier Credits" during the years 2000-2004; and (iv) thousands of documents concerning GM's accounting for its pension and health care liabilities. Class Counsel were therefore in a solid position to assess the strengths and weaknesses of their case before agreeing on the terms of the proposed Settlement.

Thus the Settlement was only attained after substantial litigation, mediation, hard-fought negotiations, and considerable investigation.

**B.      The Settlement Provisions**

The terms of the Settlement are embodied in the terms of the Settlement Agreement attached as Exhibit 1 hereto. The most important terms of the Settlement are summarized below.

**1.      Settling Defendants.**

The Settling Defendants are the General Motors Corporation and all Defendants named in the current Complaint.

**2.      GM Plans Affected.**

The GM Plans covered by the Settlement are the General Motors Savings-Stock Purchase Program for Salaried Employees ("S-SPP" or "Salaried Plan") and the General Motors Personal Savings Plan for Hourly Rate Employees ("PSP" or "Hourly Plan").

**3.      Settlement Fund.**

The Class Settlement Amount is $37.5 million dollars, in cash.

4.    **Structural Changes.**

In addition to the Class Settlement Amount, Settlement Class Members will also benefit from significant structural changes that have been made as a result of this litigation and which GM will keep in place for a period of at least four years as a result of this Settlement.  In particular, pursuant to this Settlement, GM has agreed that:  (1) it will retain an independent fiduciary to continually monitor the prudence of offering the Company Stock Fund as an investment in the Plans; (2) it will not require participants to invest contributions in Company Stock; (3) it will not impose a Required Retention Period on investments in Company Stock; (4) it will not make matching contributions in the form of Company Stock; (5) it will maintain upgraded communications to the Plans' participants; (6) it will make available to all Plan participants free of charge the use of a Savings Plan portfolio tool for a period of one year that will enable Plan participants to model various retirement scenarios based upon the investment risk profile they select; and (7) it will make available to all Plan participants one year of participation in the "Money in Motion" financial advisory program from the Ayco Company at a reduced cost of $30 (currently, the "Money in Motion" program is only offered to Salaried Plan participants and at a cost of $200; thus the "Money in Motion" program represents a hard-cash value of $170 to each Plan participant who chooses to take advantage of it).

5.    **Settlement Class.**

The Settlement Agreement contemplates that the Court will certify the following Settlement Class pursuant to Fed. R. Civ. P. 23(b)(1):

> All persons who were participants or beneficiaries of the Plans at any time between March 18, 1999 and May 26, 2006, inclusive, who bring claims for breach of fiduciary and co-fiduciary duty under ERISA.  Defendants and their heirs, successors in interest, or assigns, to the extent such persons acquire an interest held by Defendants, are excluded from the Settlement Class.

001834-11 214402V1

- 4 -

6.      **Released Claims.**

The claims of the Settlement Class released under the Settlement Agreement are generally claims in connection with Company Stock held in the Plans which were or could have been asserted in the Complaint.  Settlement Agreement, § 4.2.  The Settlement and dismissal of the ERISA action would not release, bar or waive any claims that are brought in the General Motors Corp. Securities litigation currently pending in *In re General Motors Corp. Sec. Litig.,* MDL No. 1749, Master Case No. 06-md-1749 (2:06-cv-12258-GER; 2:06-cv-12259-GER (E.D. Mich.)), or in other ERISA litigation currently pending against some of the Defendants in *Young v. General Motors Inv. Mgmt. Corp.,* Case No. 07 Civ. 1994 (BSJ) (S.D.N.Y.); and *Brewer v. General Motors Inv. Mgmt. Corp. et al.*, Case No. 07-cv-02928 (BSJ) (S.D.N.Y.).  Settlement Agreement § 4.4.

7.      **Plan of Allocation.**

The proposed Plan of Allocation appears as Exhibit C to the Settlement Agreement. Under the Plan of Allocation, subject to Court approval and after payment of Court-approved attorneys' fees, costs and Service Awards for the Named Plaintiffs, the Net Settlement Amount will be allocated amongst Class Members in proportion to the losses suffered by each Plan participant's investment in Company Stock during the Class Period.

8.      **Notice**

The proposed Preliminary Approval Order filed herewith as Exhibit 2 provides for the following notices:  (1) a Mailed Notice, attached as Exhibit 3 to this memorandum, to be mailed to the last known address of all Settlement Class Members, and to be published on a website maintained by the Notice administrator; and (2) a short form Publication Notice (Exhibit 4 to this memorandum) to be published in the *USA Today* (national edition) and the *Detroit Free Press.*

**III.    THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED**

**A.    The Settlement Is Well Within the Range of Possible Approval**

The dismissal or compromise of any class action requires the Court's approval.  Fed. R.

Civ. P. 23(e)(1)(A).  Approval of a proposed class-action settlement is a three-step process:  (1)

the court must preliminarily approve the proposed settlement; (2) members of the class must be

given notice of the proposed settlement; and (3) a final hearing must be held, after which the

court must decide whether the proposed settlement is fair, reasonable and adequate.  *See*

MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.41, at 236 (1995).  *See also, e.g., In re*

*Telectronics Pacing Sys., Inc.,* 137 F. Supp. 2d 985, 1026 (S.D. Ohio 2001) (citing *Williams v.*

*Vukovich,* 720 F.2d 909, 921 (6th Cir. 1983)).

The primary question raised by a request for preliminary approval is whether the

proposed settlement is "within the range of possible approval."  *See* MANUAL FOR COMPLEX

LITIGATION (THIRD) § 30.41, at 237.  In other words, "the Court first must determine whether the

proposed settlement is potentially approvable."  *Berry v. School Dist. of Benton Harbor,* 184

F.R.D. 93, 97 (W.D. Mich. 1998).  The purpose of this review is to "ascertain whether there is

any reason to notify the class members of the proposed settlement and to proceed with a fairness

hearing."  *Id.*  A district court "bases its preliminary approval of a proposed settlement upon its

familiarity with the issues and evidence of the case as well as the arms-length nature of the

negotiations prior to the settlement."  *Telectronics,* 137 F. Supp. 2d at 1026.  "If the proposed

settlement appears to be the product of serious, informed, non-collusive negotiations, has no

obvious deficiencies, does not improperly grant preferential treatment to class representatives or

segments of the class, and falls with[in] the range of possible approval, then the Court should

direct that notice be given to the class members of a formal fairness hearing, at which evidence

may be presented in support of and in opposition to the settlement." *Id.* at 1015 (quoting MANUAL FOR COMPLEX LITIGATION § 30.44 (2d ed. 1985)).

Here, the parties engaged in extensive arm's-length negotiations, including a face to face meeting without a mediator, and two separate day-long mediations, and the proposed Settlement Class was represented by experienced counsel. The resulting Settlement, if approved, will ensure a substantial and prompt payment to Settlement Class Members in proportion to the amounts lost as a result of their Plan investments in Company Stock. Just as important, the Settlement provides for valuable structural relief which will both protect Plan participants from catastrophic losses in the future and help ensure a greater degree of diversification of Plan holdings. Gone is any match in Company Stock, and any resultant pressure on employees to overweight their holdings in Company Stock. In place is an independent fiduciary with the express duty to monitor the ongoing prudence of allowing Plan assets to be invested in Company Stock. All Plan participants will receive upgraded communications regarding their Plan investments, and all will be offered the ability to obtain personalized investment counseling from Ayco for a $30 co-pay. In short, the proposed Settlement is an excellent result for the Settlement Class, and warrants preliminary approval.

**B.      A Preview of the Criteria for Final Approval Demonstrates That Preliminary Approval Should Be Granted**

At the preliminary approval stage, this Court need not and should not determine whether it will ultimately approve the Settlement. However, a preview of the factors this Court must consider at the final approval stage is useful, and here demonstrates the propriety of a grant of preliminary approval.

Courts consistently favor the settlement of disputed claims. *See, e.g., Telectronics,* 137 F. Supp. 2d at 1008-09 ("[b]eing a preferred means of dispute resolution, there is a strong

presumption by courts in favor of settlement"); *see also Berry,* 184 F.R.D. at 97 (settlements of

class actions are favored).  "There is usually an initial presumption of fairness when a proposed

class settlement, which was negotiated at arm's length by counsel for the class, is presented for

court approval."  4 HERBERT NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS, § 11.41,

at 90 (4th ed. 2002).

It is axiomatic that, in evaluating a proposed settlement, courts "do not decide the merits

of the case or resolve unsettled legal questions."  *Carson v. American Brands, Inc.,* 450 U.S. 79,

88 n.14 (1981); *see also Rankin v. Rots,* 2006 U.S. Dist. Lexis 45706, at *9 (E.D. Mich. June 28,

2006) ("The Court will not substitute its business judgment for that of the parties; the only

question … is whether the settlement, taken as a whole, is so unfair on its face as to preclude

judicial approval.") (internal quotations omitted).  Indeed, as Judge Lawson noted in *Gardner v.*

*Lafarge Corp.* 2007 U.S. Dist. Lexis 42536, at *14-15 (E.D. Mich. June 12, 2007):

> [T]he Court's role "'must be limited to the extent necessary to
> reach a reasoned judgment that the agreement is not the product of
> fraud or overreaching by, or collusion between, the negotiating
> parties and that the settlement, taken as a whole, is fair, reasonable
> and adequate to all concerned.'"  *Clark Equip. Co. v. Int'l Union,*
> *Allied Indus. Workers of Am., AFL-CIO,* 803 F.2d 878, 880 (6th
> Cir. 1986) (quoting *Officers for Justice v. Civil Service*
> *Commissions, etc.*, 688 F.2d 615, 625 (9th Cir. 1982)).  *See also*
> *Williams,* 720 F.2d at 921 ("The Court has no occasion to
> determine the merits of the controversy or the factual underpinning
> of the legal authorities advanced by the parties.").

As this Court has stated, its role at the final approval stage is to "determine, after holding a

fairness hearing, whether the settlement is fair, adequate, and reasonable, as well as consistent

with the public interest."  *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich.

2003) (quoting *Bailey v. Great Lakes Canning, Inc.,* 908 F.2d 38, 42 (6th Cir. 1990)).

In making the ultimate determination as to whether a settlement is fair, adequate,

reasonable and consistent with the public interest, this Court will consider the following factors:

> (a) the likelihood of success on the merits weighed against the amount and form of the relief offered in the settlement; (b) the risks, expense, and delay of further litigation; (c) the judgment of experienced counsel who have competently evaluated the strength of their proofs; (d) the amount of discovery completed and the character of the evidence uncovered; (e) whether the settlement is fair to the unnamed class members; (f) objections raised by class members; (g) whether the settlement is the product of arm's length negotiations as opposed to collusive bargaining; and (h) whether the settlement is consistent with the public interest. *See Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir. 1983); *Kogan v. AIMCO Fox Chase, L.P.,* 193 F.R.D. 496, 501-02 (E.D. Mich. 2000); *Steiner v. Fruehauf Corp.,* 121 F.R.D. 304, 305-06 (E.D. Mich. 1988).

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 522; *accord, Rankin v. Rots*, 2006 U.S. Dist. Lexis 45706, at *9-10.

### 1.     The Likelihood of Success on the Merits Weighed Against the Amount and Form of the Relief Offered in the Settlement

Having survived two separate sets of motions to dismiss filed by the core Defendants, Plaintiffs believe that their claims are meritorious.  They also believe that the evidence supports their claims under the standards outlined by this Court and other courts considering similar claims alleging breaches of fiduciary duty under ERISA.  Not surprisingly, however, Defendants took a different view of the impact of this Court's ruling, and forcefully advocated their views. In the absence of Settlement, Defendants would have continued to vigorously contest the factual and legal issues in this case at the summary judgment stage and through trial and appeal if necessary.  Plaintiffs therefore must acknowledge the risk that Defendants could prevail on certain legal or factual issues, which could reduce or eliminate the Class' potential recovery.

The inherent risk in any litigation is even greater in an ERISA class action.  The law of ERISA claims on behalf of 401(k) Plan participants is complex, rapidly developing, and uncertain.  There have been few trials of breach of fiduciary duty claims, and the reported

decisions on summary judgments and after trial illustrate the burdens Plaintiffs would have faced. *See, e.g., Kuper v. Iovenko,* 66 F.3d 1447 (6th Cir. 1995); *Nelson v. IPALCO Enters., Inc.,* 480 F. Supp. 2d 1061 (S.D. Ind. 2007), *aff'd,* 2008 U.S. App. Lexis 2 (7th Cir. Jan. 2, 2008); *DiFelice v. US Airways, Inc.,* 436 F. Supp. 2d 756 (E.D. Va. 2006), *aff'd,* 497 F.3d 410 (4th Cir. 2007).

Accordingly, success after trial was far from certain in this case. Further, while the amount of the proposed Settlement is fixed at a substantial sum of cash ($37.5 million) together with highly valuable structural relief, the amount Plaintiffs might recover if successful is not – and must be discounted by the risk of taking nothing.

**2.      The Risks, Expense, and Delay of Continued Litigation**

"Settlements should represent 'a compromise which has been reached after the risks, expense and delay of further litigation have been assessed.'" *Cardizem,* 218 F.R.D. at 523 (quoting *Williams,* 720 F.2d at 922). "[T]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery." *Id.* These risks are particularly pronounced with respect to class actions, which are "inherently complex." *Telectronics,* 137 F. Supp. 2d at 1013. "[S]ettlement avoids the costs, delays, and multitude of other problems associated with" class actions. *Id.*

Litigating this case to a resolution on the merits would be a massive undertaking, and would entail enormous expense and delay. As in *Cardizem:*

> Although significant discovery has already taken place, substantial additional effort and expense would be required to prepare this matter for trial. This would include (1) completion of fact and expert discovery, (2) preparing witnesses, experts and exhibits, and (3) completion of pre-trial motion practice, including probable motions for summary judgment.

218 F.R.D. at 525.  Were this case to proceed to judgment on the merits, both sides would retain experts in numerous areas – including, *e.g.,* accounting, health care and pension costs, fiduciary responsibility and damages.  In addition, the huge volume of documents and the complexity of the underlying factual issues would necessitate the presentation of large numbers of fact witnesses and exhibits at trial.  In short, the burdens on the parties and the Court would be mammoth in the absence of a Settlement.

In addition to expense, the resolution of Plaintiffs' claims on the merits poses risk to Plaintiffs.  Again, the law in this area is rapidly evolving, with new opinions being issued almost weekly.  Even after this Court's rulings on Defendants' two motions to dismiss, the parties themselves disagree about what the Plaintiffs would need to prove in order to prevail on their claims.  Plaintiffs fully expect that Defendants would continue to vigorously defend against their allegations, fighting them every step of the way through the remainder of discovery, on the merits at trial, and through a post-trial appeal.  The Settlement eliminates that delay and, if approved, will advance the recovery to the Settlement Class by a number of years.

Hence, "the certain and immediate benefits to the Class represented by the Settlement outweigh the possibility of obtaining a better result at trial, particularly when factoring in the additional expense and long delay inherent in prosecuting this complex litigation through trial and appeal."  *Cardizem,* 218 F.R.D. at 525.

### 3.   The Judgment of Experienced Counsel and the Amount and Character of Discovery

In deciding whether to approve a proposed settlement, "the Court also considers the opinion of experienced counsel as to the merits of the settlement."  *Id.*  Indeed,

> [T]he court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs. Significantly, however, the deference afforded counsel should

> correspond to the amount of discovery completed and the character
> of the evidence uncovered.

*Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir. 1983) (internal citations omitted).

Here, Class Counsel has extensive experience in handling class action ERISA cases and other complex litigation.  Hagens Berman Sobol Shapiro has served or is serving as lead or co-lead counsel in several ERISA class action cases, including *In re Enron Corp. ERISA Litig., In re Touch Am. ERISA Litig., Summers v. UAL Corp. ESOP Committee,* and *Nelson v. IPALCO Enters., Inc.*  Scott and Scott has also served as lead or co-lead counsel in *In re Royal Dutch/Shell Petroleum ERISA Litig.*, and *Shirk, et. al. v. Fifth Third Bancorp, et. al.*  Both firms have also served as co-lead or lead counsel in numerous other class actions across the country. *See* Exhibits 5 and 6 (firm résumés).

The investigation, extensive document review, briefing on the motions to dismiss and the lengthy negotiation process have enabled Class Counsel to thoroughly assess the strengths and weaknesses of the ERISA claims.  Based on that assessment, Class Counsel strongly believe that the proposed Settlement is fair, reasonable, and in the best interest of the Plans and the Settlement Class.

### 4.     The Settlement Is Fair to Unnamed Class Members

The Settlement provides for significant relief, both monetary and structural.  The monetary component will be equitably allocated to Settlement Class Members after the deduction of Court-approved fees and costs, and will be based upon the amount of the Settlement Class Members' losses.  In addition, the structural relief will benefit all of the Plans' participants, and financial planning services will be made available to all.  Accordingly, Plaintiffs submit that the Settlement is fair to unnamed Settlement Class Members.

Of course, the Court cannot assess any objections by absent Settlement Class Members until a Fairness Hearing has occurred.

### 5.      The Settlement Is the Product of Arm's-Length Negotiations

Absent evidence to the contrary, the Court should presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion. *Telectronics,* 137 F. Supp. 2d at 1016 ("'Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered.'") (quoting HERBERT NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 11.51 (3d ed. 1992)).

Here, the evidence is consistent with the presumption.  Settlement discussions were contentious and spanned the course of many months.  When the first mediation was unsuccessful, Defendants proceeded to argue their second motion to dismiss.  The case was only settled after two and one-half years of litigation, extensive discovery, and a second mediation before an experienced mediator and retired federal judge.  Under the circumstances, this Court should find that the Settlement was negotiated at arm's length, and that this factor weighs in favor of approval.

### 6.      The Settlement Is Consistent with the Public Interest

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources."  *Cardizem,* 218 F.R.D. at 530 (quoting *Granada Inv., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir. 1992)).  Here, there is no reason to deviate from the strong public interest in favor of this class action Settlement which provides significant monetary and non-monetary relief to the Class.

Accordingly, all of the factors which this Court must ultimately weigh at the Fairness

Hearing counsel strongly in favor of the preliminary approval of the proposed Settlement.

## C.   This Court Should Preliminary Certify the Proposed Settlement Class

Class certification is governed by Fed. R. Civ. P. 23, regardless of whether certification is

sought pursuant to a contested motion or, as here, pursuant to a settlement.  *See Amchem Prods.*

*v. Windsor,* 521 U.S. 591, 619-29 (1997).  Accordingly, in order to effectuate the proposed

Settlement, Plaintiffs seek preliminary certification of the following Class:

> All persons who were participants or beneficiaries of the Plans at
> any time between March 18, 1999 and May 26, 2006, inclusive,
> who bring claims for breach of fiduciary and co-fiduciary duty
> under ERISA.  Defendants and their heirs, successors in interest, or
> assigns, to the extent such persons acquire an interest held by
> Defendants, are excluded from the Settlement Class.

Plaintiffs brought this litigation seeking relief on behalf of the Plans and their participants for

claims based on Defendants' alleged breaches of their fiduciary duties.  Plaintiffs' Plan-wide

claims for breach of fiduciary duty under the Employee Retirement Income Security Act of 1974

("ERISA") § 404(a) (29 U.S.C. § 1104(a)(2)) are well-suited for certification.  Time and again,

courts have certified similar ERISA claims for breach of fiduciary duty for class treatment.  *See,*

*e.g., In re CMS Energy ERISA Litig.*, 225 F.R.D. 539 (E.D. Mich. 2004) (certifying claims for

breach of fiduciary duty under Rule 23(b)1)); *Rankin v. Rots*, 220 F.R.D. 511 (E.D. Mich. 2004)

(same).[5]  As the court cogently reasoned in *White v. Sundstrand Corp.*, 1999 U.S. Dist. Lexis

15091, at *19 (N.D. Ill. Sept. 30, 1999) (citations omitted):

---

[5] *See also In re Tyco Int'l, Ltd.*, 2006 U.S. Dist. Lexis 58278 (D.N.H. Aug. 15, 2006) (certifying ERISA breach of fiduciary duty claims under Rule 23(b)(1)); *Furstenau v. AT&T Corp.*, 2004 U.S. Dist. Lexis 27042, at *14 (D.N.J. Sept. 2, 2004) (certifying breach of fiduciary duty claims under Rule 23(b)(1) "where success necessarily results in plan-wide relief and failure to prove breach of fiduciary duty would necessarily preclude actions by other plan participants"); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004) (finding Rule 23(b)(1) certification appropriate for settlement class); *Bublitz v. E.I. duPont de Nemours & Co.*, 202 F.R.D. 251, 259 (S.D. Iowa 2001); *Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 397-98 (E.D. Pa. 2001); *Moore v. Simpson*, 1997 U.S. Dist. Lexis 13791 (N.D. Ill. Sept. 5, 1997); *In re IKON Office Solutions, Inc. Sec.*

> [T]he only relief available for violations of breach of fiduciary duty under 29 U.S.C. § 1109 is relief on behalf of the plan…. This is because under section 1109, a plan participant or beneficiary may bring an action to remedy a breach of fiduciary duty only in a representative capacity, for which no individual relief is available…. Thus, a breach of fiduciary duty claim is properly pursued as a class action. *Stanek v. AT & T*, 1998 U.S. Dist. Lexis 18717, at *13 n.4, No. 96 C 4096 (N.D. Ill. Nov. 24, 1998).

Under Rule 23(a), a proposed class must satisfy four threshold requirements in order to obtain certification:  (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.  A proposed class must also satisfy the requirements of one or more of the three subsections of Rule 23(b).  Here, the proposed Class satisfies Rule 23(a)'s prerequisites, and it also satisfies Rule 23(b)(1).

### 1.      Rule 23(a)(1) – Numerosity

Rule 23(a)(1) permits class treatment where "the class is so numerous that joinder of all members is impracticable."  Here, according to the Defendants, the Settlement Class includes approximately 180,000 persons.  Numerosity is easily established.

### 2.      Rule 23(a)(2) – Commonality

The proposed Class satisfies Rule 23(a)(2), which requires "questions of law or fact common to the class." As many courts have recognized, "The commonality test is qualitative rather than quantitative, that is, there need be only a single issue common to all members of the class."  *See, e.g., In re American Med. Sys.*, 75 F.3d 1069, 1080 (6th Cir. 1996).

Common questions of fact and law permeate all of the claims alleged here.  These questions include:  (a) Were Defendants fiduciaries in relation to the Plans and the members of the Class? (b) Did Defendants breach their fiduciary duties of prudence and loyalty to Plaintiffs and the members of the Class? (c)  Did Defendants violate ERISA? and (d) Did the members of

---

*Litig.*, 191 F.R.D. 457, 466 (E.D. Pa. 2000); *Swody v. Harrah's New Orleans Mgmt. Co.*, 1996 U.S. Dist. Lexis 5512 (E.D. La. Apr. 22, 1996); *Atwood v. Burlington Indus. Equity, Inc.*, 164 F.R.D. 177, 179 (M.D.N.C. 1995).

the Class sustain recoverable damages, and, if so, what is the proper measure of damages? These common questions of law and fact are sufficient to meet the commonality requirement of Rule 23(a)(2). *See, e.g., In re CMS Energy ERISA Litig.*, 225 F.R.D. 539, 2004 U.S. Dist. Lexis 26862 at *9-11 (similar common questions sufficient to meet commonality requirement); *Rankin v. Rots*, 220 F.R.D. at 517-18 (same); *In re WorldCom, Inc., ERISA Litig.*, 2004 U.S. Dist. Lexis 19786, at *7 (S.D.N.Y. Oct. 13, 2004) ("There are common questions of law and fact including whether Merrill Lynch and the other defendants were ERISA fiduciaries for the Plan and Predecessor Plans, whether they breached their fiduciary duties, and whether those breaches injured class members."); *Moore v. Simpson,* 1997 U.S. Dist. Lexis 13791, at *9-10 ("All of these questions are sufficient to satisfy plaintiffs' burden under Rule 23(a)(2) because they all address common issues of owed fiduciary responsibility to the plan participants.").

### 3.    Rule 23(a)(3) – Typicality

Plaintiffs' claims are also typical of the claims of the Class, as required by Rule 23(a)(3). "The typicality requirement is met if the plaintiff's claim 'arises from the same event or practice or course of conduct that gives rise to the claims of the other class members, and her or his claims are based on the same legal theory.'" *Rankin v. Rots,* 220 F.R.D. at 518 (quoting *Little Caesar Enters., Inc. v. Smith,* 172 F.R.D. 236, 242-43 (E.D. Mich. 1997)); *see also American Med. Sys.,* 75 F.3d at 1082. Plaintiffs' claims need not be identical to those of every Class Member; rather, typicality is satisfied as long as the claims share a common element of fact or law. *Senter v. GMC,* 532 F.2d 511, 525 n.31 (6th Cir. 1976).

Here, Plaintiffs' claims are typical of those of all Class Members. As with all of the Plans' participants, Plaintiffs' claims arise from Defendants' alleged breaches of fiduciary duty – and all seek to recover based upon the very same legal theories that govern all Class Members' claims. *See, e.g., Moore v. Simpson*, 1997 U.S. Dist. Lexis 13791, at *11 (typicality met because

"plaintiffs' case stems from the defendants' alleged course of conduct with respect to the Fund, in which all members of the plaintiff class have an interest"); *see also Rankin v. Rots,* 220 F.R.D. at 519 (ERISA company stock cases are properly certified since "the appropriate focus in a breach of fiduciary duty claim is on the conduct of the defendants") (quoting *In re IKON Office Solutions, Inc. Sec. Litig.,* 191 F.R.D. 457, 465 (E.D. Pa. 2000)).  Because each Class Member has the same claim arising from the same conduct and seeking the same relief on behalf of the Plans pursuant to 29 U.S.C. § 1132(a)(2), the typicality requirement of Rule 23(a)(3) is easily satisfied.

### 4.    Rule 23(a)(4) – Adequacy of Representation, and Rule 23(g)(1)(B)-(C)

Rule 23(a)(4) requires that the class representatives "will fairly and adequately protect the interests of the class."  In assessing adequacy the court must answer two questions:  (1) Do the representative plaintiffs have common interests with the unnamed class members, and (2) will the representative plaintiffs and their counsel prosecute this action vigorously on behalf of the class?  *See, e.g., American Med. Sys.,* 75 F.3d at 1083; *Cross v. National Trust Life Ins. Co.,* 553 F.2d 1026, 1031 (6th Cir. 1977) (adequacy rule tests "the experience and ability of counsel for the plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent").

Both prongs of the adequacy requirement are met here.  As discussed above, Plaintiffs' interests are fully aligned with those of absent Class Members, since they bring the same claims for the same remedies under the same legal theories.  There is no antagonism between Plaintiffs and the Class Members; all seek to increase the value of the Plans' holdings.

The second prong of the adequacy requirement is also met, as both Plaintiffs and their counsel have vigorously prosecuted this lawsuit.  Plaintiffs have retained local and national firms with extensive experience in ERISA, class actions, and litigation in general.  Copies of the

résumés of the two lead counsels' law firms are attached as Exhibits 5-6. Plaintiffs' counsel have extensive experience in class actions and other complex litigation – including class actions on behalf of employees, and class actions based on alleged violations of ERISA. *See id.* Plaintiffs' counsel accordingly have sufficient knowledge about the applicable law of both class actions in general and ERISA cases in particular, and have devoted ample resources to this litigation.[6]

Plaintiffs therefore satisfy the adequacy requirement.

### 5.      The Requirements of Rule 23(b)(1) Are Met

Under Rule 23(b)(1), a class may be certified if:

> (1) the prosecution of separate actions by or against individual members of the class would create a risk of
>
> (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
>
> (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

Certifications under both sub-sections of Rule 23(b)(1) are common in ERISA breach of fiduciary duty cases because of the defendants' alleged "unitary treatment" of putative class members. *See, e.g., In re Enron Corp. Sec. Derivative & "ERISA" Litig.*, 2006 U.S. Dist. Lexis 43146, *13-15 (S.D. Tex. June 5, 2006) (certifying ERISA breach of fiduciary duty claims under Rule 23(b)(1)(A) and (B)); *Rogers v. Baxter Int'l, Inc.,* 2006 U.S. Dist. Lexis 12926 (N.D. Ill. Mar. 22, 2006) (same); *Rankin v. Rots,* 220 F.R.D. at 522 (same); *see also In re CMS Energy ERISA Litig.,* 225 F.R.D. 539, 2004 U.S. Dist. Lexis 26862 at *17-18 (claims similar to those at issue here "'as a practical matter' would 'be dispositive of the interests of the other members not

---

[6] Plaintiffs have therefore satisfied Rule 23(g)(1)(B) and (C).

parties to the adjudication"); *Kolar v. Rite Aid Corp.*, 2003 U.S. Dist. Lexis 3646, at *9 (E.D. Pa.

Mar. 11, 2003) (because of ERISA's distinctive "representative capacity" and remedial

provisions, "ERISA litigation of this nature presents a paradigmatic example of a (b)(1) class");

*In re IKON Office Solutions, Inc. Sec. Litig.*, 191 F.R.D. at 466 (same)*; In re WorldCom, Inc.

ERISA Litig.,* 2004 U.S. Dist. Lexis 19786, at *8 (certifying ERISA claims for breach of

fiduciary duty against ESOP and 401(k) plan trustee Merrill Lynch pursuant to Rule 23(b)(1)(B)

since "[a]ny adjudication with respect to individual members of the class will as a practical

matter be dispositive of the interests of the other members of the class").[7]

Because this action seeks remedies arising from breaches of fiduciary duties under

ERISA, the only remedy available to Plan participants is Plan-wide relief, namely, the restoration

of losses to the Plans and their participants.  *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S.

134, 139-40 (1985); *see also* 29 U.S.C. § 1109(a) (liability for breach of fiduciary duty is "to the

plan"); 29 U.S.C. § 1132(a)(2) (authorizing plan participant to sue for breach of fiduciary duty

under § 409(a)).  Thus, this action for breach of fiduciary duty under ERISA is **by law** a

representative action seeking to impose on the Defendants obligations applicable to all

participants in the Plans.  *Gruby v. Brady*, 838 F. Supp. 820, 828 (S.D.N.Y. 1993) (quoting

*Specialty Cabinets & Fixtures, Inc. v. Am. Equitable Life Ins. Co.*, 140 F.R.D. 474, 478 (S.D. Ga.

1991)) (holding that certification of class seeking relief for violations of ERISA was proper

under Rule 23(b)(1)); *Koch v. Dwyer*, 2001 U.S. Dist. Lexis 4085, at *14-19 (S.D.N.Y. Mar. 23,

2001) (same).

Accordingly, the Settlement Class' claims should be certified pursuant to Rule 23(b)(1).

---

[7] *See also* Fed. R. Civ. P. 23(b)(1)(B), Advisory Comm. Notes to 1996 Amendment (stating that certification under 23(b)(1) is appropriate in cases charging breach of trust by a fiduciary to a large class of beneficiaries).

**D.      The Proposed Notice to the Class Satisfies Rule 23 and the Requirements of Due Process**

Once a court grants preliminary approval to a proposed settlement, "[n]otice of the proposed settlement and the fairness hearing must be provided to class members." *Reed v. Rhodes,* 869 F. Supp. 1274, 1278 (N.D. Ohio 1994); *see also* Fed. R. Civ. P. 23(e)(1)(B)(C).

To satisfy due process, notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950). The notice should provide a "very general description[]of the proposed settlement." *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982). This description should nonetheless be sufficient to provide class members with "a full and fair opportunity to consider the proposed decree and develop a response." *Reed,* 869 F. Supp. at 1279.

Rule 23(c)(2)(A) provides that for classes certified under Rule 23(b)(1), as Plaintiffs request here, "the court may direct appropriate notice." When a class action settlement is proposed, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Rule 23(e)(1). In this case, because the names and last know addresses of addresses of all Settlement Class Members are available from the Plans' records, Plaintiffs are able to provide not only "appropriate" and "reasonable" notice as required by these provisions, but the enhanced notice required for classes certified under Rule 23(b)(3), "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Rule 23(c)(2)(B). Here, the proposed notice plan calls for mailing of individual Notice to the last known address of all Settlement Class Members.

Here, the proposed form of Notice summarizes in plain English the terms and operation of the Class Action Settlement Agreement, the considerations that caused the Named Plaintiffs and Class Counsel to conclude that the Settlement is fair and adequate, the maximum legal fees and Service Awards that may be sought, the procedure for objecting to the Settlement, and the date and place of the Fairness Hearing. *See* 3 HERBERT NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 8.34 (4th ed. 2002). Upon Court approval, the Class Notice will be mailed to each Settlement Class Member's last known address, no later than 60 days prior to the Fairness Hearing,[8] and will be published on a website established by the Notice administrator. A summary notice will also be published in *USA Today* (national edition) and the *Detroit Free Press.* These Notices will fairly apprise Settlement Class Members of the Settlement and their options, and will satisfy the requirements of due process.

**E.     Proposed Schedule For Final Approval**

If the Court preliminarily approves the Settlement, Class Counsel propose the following schedule:

| | |
|---|---|
| Notice mailed to Settlement Class Members | Within 45 days after the Order Preliminarily Approving Settlement is entered by the Court |
| Publication Notice appears in *USA Today* (national edition) and *Detroit Free Press* | Within 45 days after thee Order Preliminarily Approving Settlement is entered by the Court |
| Last day for Settlement Class Members to object to the Settlement | No later than 20 days before the Final Approval Hearing |
| Class Counsel to file application for attorneys' fees and expenses, and Service Awards for Named Plaintiffs | No later than 10 business days before the Final Approval Hearing |
| Settling Parties submit papers in support of final approval of Settlement | No later than 10 business days before the Final Approval Hearing |

---

[8] While individual circumstances will dictate the length of time between the notice and the fairness hearing, no less than two weeks should be provided. *Williams,* 720 F.2d at 921.

| Final Approval Hearing | At the Court's convenience at least 60 days after the date the Notice is mailed to the Settlement Class |
|---|---|

## IV.    CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that this Court:  (i) enter the Preliminary Approval Order attached as Exhibit 2 hereto; (ii) preliminarily certify the Settlement Class pursuant to Fed. R. Civ. P. 23(b)(1); and (iii) set a Fairness Hearing, along with deadlines for Class Counsel to file and serve their motion for final approval of the Proposed Settlement, Plan of Allocation, award of attorneys' fees and expenses to Class Counsel and Service Awards for the Named Plaintiffs.

DATED:  January 15, 2008                    Respectfully Submitted,

By:  s/ Andrew M. Volk
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
Email: Andrew@hbsslaw.com

**SCOTT + SCOTT, LLC**
DAVID R. SCOTT
108 Norwich Avenue
P.O. Box 192
Colchester, CT  06415
Telephone: (860) 537-5537
Facsimile: (860) 537-4432

-and-

**SCOTT + SCOTT, LLC**
GEOFFREY M. JOHNSON
33 River Street
Chagrin Falls, OH 44022
Telephone:  (440) 247-8200
Facsimile:  (440) 247-8275

**Co-Lead Counsel for Plaintiffs**

**ELWOOD S. SIMON & ASSOCIATES, P.C.**
ELWOOD S. SIMON (P20499)
JOHN P. ZUCCARINI (P41646)
355 South Old Woodward Avenue, Ste. 250
Birmingham, MI  48009
Telephone: (248) 646-9730

**Liaison Counsel for Plaintiffs**

## CERTIFICATE OF SERVICE

I hereby certify that on January 15, 2008, I electronically filed the foregoing document with the Clerk of the Court using the ECF System which will send notification of such filing to the following:

- **Timothy A. Duffy**
  tduffy@kirkland.com semorris@kirkland.com,kpankopf@kirkland.com
- **Geoffrey M. Johnson**
  gjohnson@scott-scott.com
- **Jonathan E. Moore**
  jmoore@kirkland.com dreilly@kirkland.com
- **John W. Reale**
  jreale@kirkland.com kpankopf@kirkland.com
- **Elwood S. Simon**
  esimon@esimon-law.com hazmcintyre923@yahoo.com
- **Andrew M. Volk**
  andrew@hbsslaw.com
- **Morley Witus**
  mwitus@bsdd.com kstevens@bsdd.com
- **John P. Zuccarini**
  zuccarinis@aol.com hazmcintyre923@yahoo.com

By:  s/ Andrew M. Volk
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:   (206) 623-0594
Email: Andrew@hbsslaw.com